IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON GALLEGOS,                                    6:13-cv-00929-PA

                    Petitioner,                    OPINION AND ORDER

         v.

JEFF PREMO,

                    Respondent.

THOMAS J. HESTER
Assistant Federal Public Defender
101 S.W. Main St., Suite 1700
Portland, Oregon 97204

         Attorney for Petitioner

FREDERICK BOSS
Deputy Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

         Attorneys for Respondent

1 - OPINION AND ORDER

PANNER, Judge

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's habeas petition is DENIED.

## **BACKGROUND**

In February 2004, while incarcerated at the Northern Oregon Regional Correctional Facilities (NORCOR), petitioner told fellow inmate Eric Hasselblad that he "wanted his wife killed." Transcript ("Tr."), p. 111. Petitioner informed Hasselblad that he had already hired and paid an individual named Curtis Reeves to kill his wife but was concerned that Reeves was "ripping him off." Tr., pp. 46-48.

Hasselblad reported petitioner's plan to Sheriff Deputy Jerry Sackmaster. Resp. Ex. 128, p. 6; Resp. Ex. 116. Working as an agent of the police, Hasselblad offered to help petitioner find someone to kill his wife. Petitioner accepted and provided Hasselblad a note with information about his estranged wife and how to find her. Resp. Ex. 128, p. 7; Tr. p. 119. Police taped two conversations between Hasselblad and petitioner discussing the best way to murder petitioner's wife. Resp. Ex. 128 at 7. Hasselblad recommended Victor Castro (an undercover police officer) to be the "hit man." Resp. Ex. 128, p. 8.

On March 2, 2004, Castro had a taped conversation with petitioner about murdering petitioner's wife:

| VICTOR: | So, consider your wife as good as dead. Do you want to change your mind? |
|---|---|
| PETITIONER: | What's that? |
| VICTOR: | Consider it done. |
| PETITIONER: | Okay. |
| VICTOR: | She's as good as dead. |
| PETITIONER: | Okay. |
| VICTOR: | Do you want out of it or are you going for it? |
| PETITIONER: | I'm on. We're goin'. |

Resp. Ex. 128, pp. 25, 31-32.

On March 4, 2004, a grand jury indicted petitioner on charges of attempted aggravated murder (five counts), conspiracy to commit aggravated murder (one count), attempted murder (two counts), attempted violation of a court's stalking protective order (two counts), and solicitation to commit murder (two counts). Resp. Ex. 102. Attorneys David A. Corden and M. Christian Bottoms, were appointed to represent petitioner. Resp. Ex. 129. They moved to withdraw after petitioner filed a bar complaint against them. Resp. Ex. 129. The trial court granted the motion and appointed Theodore Coran to represent petitioner. Resp. Ex. 129; Resp. Ex. 111, p. 2.

3 - OPINION AND ORDER

On August 31, 2005, petitioner pled guilty to five counts of attempted aggravated murder. Resp. Ex. 103. The trial court sentenced petitioner to a 157-month term of imprisonment. Resp. Ex. 101. Petitioner filed a direct appeal assigning plain error to the trial court's failure to merge the five counts of attempted murder into two counts for sentencing. Resp. Ex. 105. The Oregon Court of Appeals reversed and remanded for entry of judgment merging the convictions. *State v. Gallegos*, 208 Or. App. 488, 145 P.3d 255 (2006). Prior to resentencing, petitioner filed a motion to withdraw his guilty plea. Tr., p. 514. The trial court denied petitioner's motion and imposed the same sentence after merging the convictions. Tr., pp. 527-528.

Petitioner subsequently sought state post-conviction relief on the basis that he received ineffective assistance of trial and appellate counsel and that the trial court had violated his Sixth Amendment right to conflict-free counsel. Resp. Ex. 111, pp. 5-8. Following an evidentiary hearing, the post-conviction (PCR) court denied relief. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Gallegos v. Premo*, 250 Or. App. 570, 284 P.3d 599 (2012), *rev. denied,* 352 Or. 377, 290 P.3d 813 (2012).

Petitioner now alleges that: (1) his Sixth Amendment rights were violated when the state trial court denied his request for new

4 - OPINION AND ORDER

counsel and his request to proceed *pro se*; (2) his trial counsel was ineffective; and (3) he was denied due process because his guilty plea was not knowing and voluntary.

## DISCUSSION

### I.  Procedural Default

Before seeking federal habeas corpus relief, a state prisoner must exhaust his available state remedies by "fairly presenting" his federal claims to the appropriate state courts.  28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  Exhaustion is satisfied if petitioner invokes "one complete round" of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

When a state prisoner fails to fairly present his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Cook v. Schriro*, 538 F.3d 1000, 1025 (9th Cir. 2008).

A federal claim is also procedurally defaulted if it is actually raised in state court, but explicitly rejected by the court based upon a state law.  *Cone v. Bell*, 556 U.S. 449, 465 (2009).  Federal habeas relief is precluded in these cases provided that the state law invoked is independent of the federal question

5 - OPINION AND ORDER

and adequate to support the judgment. *Coleman*, 501 U.S. at 750; *Cone*, 556 U.S. at 465.   Habeas review of procedurally defaulted claims is precluded absent a showing of cause and prejudice, or that the failure to consider the federal claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Respondent argues that subparts of Grounds One and Two, regarding the trial court's denial of his motion to withdraw his guilty plea and trial counsel's alleged lack of contact with petitioner, are procedurally defaulted because, although petitioner raised these subparts in his petition to the PCR trial court, petitioner failed to fairly present these claims on appeal.

A careful review of the record reveals that petitioner argued that counsel was ineffective for failing to communicate with him within the discussion of his ineffective assistance of counsel claim in his appellate briefing (Ground Two).  With respect to the trial court's denial of his motion to withdraw his guilty plea, petitioner fairly presented this subpart by citing to his amended post-conviction petition and discussing this issue in his appellate brief.

However, there is a question as to whether petitioner's Sixth Amendment claim is barred by an independent and adequate state rule.   In Oregon, a defendant must raise trial court errors on direct appeal, and failure to do so results in preclusion of

post-conviction relief. *Palmer v. State of Oregon,* 318 Or. 532,
867 P.2d 1368 (1994); *Hunter v. Maass*, 106 Or. App. 438, 808 P.2d
723, 725 (1991); *Kellotat v. Cupp*, 719 F.2d 1027, 1030 (9th Cir.
1983). However, when a defendant enters a guilty plea in Oregon,
trial court errors are not subject to direct appeal. ORS 138.050.[1]
While the Oregon Court of Appeals has held that defendants may
raise all other issues on post-conviction appeal, few Oregon cases
address this issue. *See State v. Buckles*, 268 Or. App. 293, 342
P.3d 116, 119 (2014)("constitutional claims that fall outside of
the scope of ORS 138.050(1) 'must be left to possible post-
conviction relief'").

In the instant proceeding, petitioner's appellate counsel did
not raise ground one, trial court errors, on direct appeal because
ORS 138.050 narrowed the scope of appeal to only issues challenging
the length of sentencing. On post-conviction appeal, the PCR court
held that *Palmer* procedurally bars petitioner from raising trial
court errors because he failed to raise this claim on direct
appeal.[2] In light of ORS 138.050 and the accompanying limited

---

[1] ORS 138.050 provides that a defendant who has pleaded
guilty or no contest may only appeal the judgment on the grounds
that the length of the sentence exceeds the maximum allowed by
law or that the sentence is unconstitutionally cruel and unusual.

[2] While the PCR court also addressed ground one on the
merits, its invocation of *Palmer* still procedurally bars habeas
relief. *See Bennett v. Mueller,* 322 F.3d 573, 580 (9th Cir.
2003)("a state court's application of a procedural bar is not

Oregon case law, the PCR court's application of *Palmer* as a procedural bar presents a complex and unclear question of Oregon state law that I need not resolve here. Instead, I address this claim on the merits. *See* 28 U.S.C. § 2254(2)(habeas petition may be denied on the merits, notwithstanding the failure to exhaust available state remedies).

Finally, to the extent that petitioner directly challenges his guilty plea as a violation of due process, petitioner procedurally defaulted this claim by failing to raise it on appeal from the denial of post-conviction relief. I reject petitioner's suggestion that a due process claim can be exhausted by alleging an ineffective assistance of appellate counsel claim.

## II. **Relief on the Merits**

A petition for writ of habeas corpus filed by a state prisoner shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Petitioner

---

undermined where, as here, the state court simultaneously rejects the merits of the claim."); *see also Harris v. Reed*, 489 U.S. 255, 264, n.10 (1989).

bears the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## A.  Ground One: Sixth Amendment Violation

In Ground for Relief One, petitioner alleges that the trial court violated his Sixth Amendment right to counsel by denying his motions for substitute counsel and to proceed *pro se*. Petitioner argues that an actual conflict of interest arose when counsel defended himself against petitioner's complaints and endorsed the trial court's speculation that petitioner was engaged in manipulation. According to petitioner, his relationship with trial counsel collapsed, creating an irreconcilable conflict. Finally, petitioner argues that the trial court's denial of his motion to proceed *pro se* violated his Sixth Amendment right as defined in *Faretta v. California*, 422 U.S. 806 (1975).

Respondent argues that this ground is not reviewable as an independent basis for habeas relief because the claim attacks constitutional errors that occurred prior to the entry of petitioner's guilty plea. Respondent cites to the rule in *Tollett v. Henderson* that a defendant who voluntarily and intelligently pleads guilty may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations. 411 U.S. 258, 266-67 (1973)("defendant may only attack the 'voluntary and intelligent character of the guilty plea'"). I disagree.

While the violation of petitioner's Sixth Amendment rights allegedly occurred prior to his guilty plea, petitioner nonetheless is challenging the voluntary nature of his plea. Specifically, petitioner alleges that because his right to substitute counsel and to proceed *pro se* were violated, he was coerced into pleading guilty. Thus, this claim is not barred by petitioner's guilty plea. Accordingly, I address petitioner's Sixth Amendment claim on the merits below.

### 1. Standards

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. This right has two components: (1) the right to conflict-free representation; and (2) the right to effective representation of counsel. *Daniels v. Woodford*, 428 F.3d 1181, 1196 (9th Cir. 2005); *Wheat v. United States*, 486 U.S. 153, 162 (1988); *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A trial court's denial of a motion to substitute counsel can implicate a criminal defendant's Sixth Amendment right to counsel and, therefore, is a cognizable claim on federal habeas review. *Bland v. Cal. Dep't of Corr.*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000)(en banc).

"To establish a violation of the right to conflict-free counsel, the petitioner must either show that (1) in spite of an objection, the trial court failed to allow him the 'opportunity to show that potential conflicts impermissibly imperil his right to a fair trial;' or (2) that an actual conflict of interest existed." *Alberni v. McDaniel*, 458 F.3d 860, 869-70 (9th Cir. 2006). The Sixth Amendment does not protect against a "mere theoretical division of loyalties," but rather protects against conflicts of interest that *adversely affect counsel's performance.* *Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002)(emphasis added); *see also Plumlee v. Masto,* 512 F.3d 1204, 1210 (9th Cir. 2008)(en banc).

The question on federal habeas review is whether "the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted, in turn, in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026; *Daniels*, 428 F.3d at 1197.

### 2. Motion for Substitute Counsel

On the day before trial, the trial court held a hearing on pretrial motions. Tr., p. 3. Petitioner's trial counsel unsuccessfully moved to suppress evidence collected by a police wiretap and intercept. Tr., p. 33. On the morning of trial, trial counsel reported that following the motion hearing, he and the

prosecutor came to a possible resolution of the case:

> That resolution was communicated to Mr. Gallegos last
> night in the presence of my investigator. We discussed
> that along with what we believed to be the strengths and
> weaknesses of the case given the Court's ruling
> yesterday.
>
> [This morning, petitioner] indicated to me that he has no
> longer any faith in my abilities to defend him and has
> asked for new counsel, or in the alternative, to be
> allowed to represent himself.

Tr., pp. 321-322.

The trial court engaged in a lengthy discussion with
petitioner regarding his motion for substitute counsel, which
included the following exchange:

PETITIONER:    I don't have a choice because I have no confidence
               in my counsel . . . I have no working relationship
               with Mr. Coran --

THE COURT:     I observed you yesterday all day long. You appeared
               to have a very good working relationship with Mr.
               Coran. Mr. Coran asked the questions that you
               insisting on being asked. When I left here last
               night at 7 o'clock, you and Mr. Coran and Mr.
               Coran's investigator were still in here discussing
               issues.

Tr., p. 340.

Mr. Coran defended his representation of petitioner stating
that "for anybody to tell me that I am not aware of what's going on
or prepared to defend is simply self-serving, and I won't stand for
it." Tr., p. 347. The trial court questioned Mr. Coran on whether
he could "professionally continue to represent [petitioner] given
the personality issues that have arisen." Tr., p. 349. Mr. Coran

12 - OPINION AND ORDER

apologized for becoming too emotional and stated that he is able to work with petitioner and "will do what [he] need[s] to try to communicate with him today." Tr., p. 358.

Following an extended discussion, including statements from Mr. Coran and the prosecutor, the trial court denied petitioner's motions for either substitute counsel or to proceed *pro se*. Tr., pp. 360-361. After conferring with Mr. Coran during a three hour recess, petitioner entered a guilty plea in exchange for the state dropping charges six through twelve and agreeing not to prosecute petitioner for witness tampering. Tr., pp. 370-380.

At the PCR court proceeding, petitioner declared that he moved for substitute counsel because he felt trial counsel had failed to adequately prepare for trial and due to "a severe personality conflict." Resp. Ex. 122, p. 2 at ¶ 5. Petitioner referred to the numerous letters he had written trial counsel and complained that trial counsel had failed to "communicate a clear defense strategy or theory." Resp. Ex. 122, p. 3 at ¶ 6. In contrast, counsel informed the trial court that he and petitioner experienced "no problems" until petitioner lost his motion to suppress. Tr., p. 349.

The PCR court rejected petitioner's assertions that there was an actual conflict between petitioner and trial counsel, concluding that petitioner was not credible. Concluding that the trial court

did not violate petitioner's Sixth Amendment rights, the PCR court

stated:

3.  Petitioner has not proved that "Coran and the Court
    had no intention of trying this case." . . . .
    Throughout the transcript of the proceedings on the
    day of trial, it is clear that the Court, DA, and
    Mr. Coran were all prepared for trial and that a
    jury panel was waiting in the hallway.

                    * * * * *

8.  Trial counsel demonstrated his willingness to
    follow petitioner's demands if it was legally
    possible. Trial counsel stated, and the prosecutor
    affirmed, that he was prepared for trial just
    before petitioner chose to accept the plea deal.
    Petitioner's general allegation that trial counsel
    was unprepared for trial is inaccurate and
    unproved.

                    * * * * *

10. Petitioner claimed that trial counsel was
    unprepared for the pre-trial motion hearing from
    the day before and for trial on that day. The court
    responded that trial counsel "did an excellent job
    yesterday" despite the reality that "factually, I'm
    sorry, [petitioner], but you didn't have much to
    work with, and your lawyer doesn't have much to
    work with" at the hearing. Even the prosecutor told
    the court that he believed trial counsel was
    working on the case, was "very prepared," and
    appeared to be making motions at the request of
    petitioner.

11. Petitioner's real problem was that he did not like
    the way the case was heading. Trial counsel
    explained,

        "[y]esterday, we had no problems. Yesterday,
        we were in there fighting and working together
        and talking, and everything was moving along
        fine. I think once the Court made its rulings
        [denying the motions to suppress damaging
        pieces of evidence] and [petitioner] had to

14 - OPINION AND ORDER

finally accept what it was that I had been
telling him for several months, I think that
may have changed his mind."

[Trial counsel] believed that petitioner complained
of his representation for merely "self-serving"
reasons, not legitimate ones. The prosecutor
also believed that petitioner was making

"an intentional attempt to preserve the record
to ensure that he can file a post-conviction
relief or an appellate claim for ineffective
assistance of counsel.... [P]etitioner was
actively engaged in the case [yesterday],
writing notes, communicating with his attorney
and through notes, verbally, and they were
actually working very well together in my
opinion."

\* \* \* \* \*

17. The trial court did not err by denying petitioner's
motions. The court properly denied the motion for
substitution of counsel. The court believed that
petitioner's motion was "an attempt to manipulate
the system" in order to get a continuance since
petitioner "did that once. You played the game once
in March. Okay. We're not going to play that game
again." The prosecutor had overwhelming evidence
that petitioner hired people to shoot his wife in
the head in front of their small children and he
tampered with witnesses.

Resp. Ex. 134, pp. 4, 6, 7, 9 at ¶¶ 3, 8, 10, 11, 17.

Petitioner has failed to show that the PCR court's factual

finding that there was no actual conflict between petitioner and

trial counsel is unreasonable in light of the evidence presented.

28 U.S.C. § 2254(d)(2). As noted by the PCR court, (1) petitioner

and trial counsel worked well together at the pre-trial motions

hearing; (2) trial counsel was prepared and effectively argued pre-

15 - OPINION AND ORDER

trial motions the day before trial; (3) trial counsel demonstrated an effort to follow petitioner's demands if legally possible; and (4) trial court viewed petitioner's motion on the morning of trial as a delay tactic.

In sum, petitioner has failed to point to evidence that counsel's allegedly conflicting interests "actually affected the adequacy of counsel's representation." *Mickens*, 535 U.S. at 1243. Petitioner's distrust of trial counsel does not rise to the level of an actual conflict. *See Plumlee*, 512 F.3d at 1211 (no actual conflict when representation by a "lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust"); *compare with Mickens*, 535 U.S. at 164-65 (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case").

Moreover, in finding petitioner was not credible, the PCR court held that trial counsel maintained adequate communication with petitioner and was prepared for trial. Resp. Ex. 133, p. 3; Resp. Ex. 134, p. 6 at ¶ 9. As the PCR court noted, trial counsel explained to the trial court that he and petitioner discussed and agreed that their trial strategy was to prevent the admission of petitioner's taped conversations with Hasselblad and Castro. Tr., p. 345. Trial counsel also noted that he and petitioner worked

well together on the day of the pre-trial motions hearing. Resp. Ex. 134, p. 7 at ¶ 11.

Accordingly, petitioner has failed to demonstrate that the PCR court's rejection of his Sixth Amendment claim is contrary to or an unreasonable application of federal law. While counsel did not agree with petitioner's desire to go to trial, counsel was prepared to try the case. Tr., pp. 349-350. This disagreement fails to rise to the level of an actual or irreconcilable conflict that affected counsel's performance. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983)("no Sixth Amendment right to a 'meaningful relationship' between an accused and his counsel"). Although counsel did not respond to every letter petitioner wrote to him, counsel adequately informed petitioner of developments and strategy in the case.

### 3. Right to Proceed *Pro Se*

Petitioner also argues that in denying his motion to proceed *pro se,* the trial court violated his Sixth Amendment rights under *Faretta.* Petitioner argues that the PCR court's holding that trial court did not violate petitioner's Sixth Amendment right to proceed *pro se* is an unreasonable application of *Faretta* because the trial court relied on petitioner's lack of legal expertise. Respondent contends that the PCR court's holding is not an unreasonable application of federal law. I agree.

17 - OPINION AND ORDER

After the trial court denied petitioner's request for substitute counsel, petitioner moved to represent himself. The trial court discussed the motion with petitioner in depth, but ultimately denied the motion. Tr., pp. 323-361. The trial court gave three reasons for denying petitioner's motion: (1) it was untimely; (2) petitioner lacked the legal expertise to proceed *pro se*; and (3) it was an attempt to manipulate the system. Tr., pp. 339, 341, 361.

In *Faretta*, the Supreme Court held that a criminal defendant has a right to represent himself "provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *Frantz v. Hazey,* 533 F.3d 724, 739 (9th Cir. 2008)(citing *Faretta,* 422 U.S. at 819). "In order to invoke the right of self-representation successfully, a defendant's waiver of counsel must be 'timely, not for the purposes of delay, unequivocal, and knowing, and intelligent.'" *McCormick v. Adams*, 621 F.3d 970, 976 (9th Cir. 2010). A court may not deny a defendant's request to proceed *pro se* under *Faretta* solely on the basis of lack of legal expertise and knowledge. *Van Lynn v. Farmon*, 347 F.3d 735, 740 (9th Cir. 2003); *Faretta*, 422 U.S. at 834.

Relying on *Van Lynn*, petitioner argues that the PCR court's holding that the trial court did not violate his Sixth Amendment

18 - OPINION AND ORDER

right is contrary to *Faretta* because the trial court relied on petitioner's lack of legal expertise. I disagree. In *Van Lynn*, the trial court denied petitioner's motion *solely* on the basis of lack of legal knowledge. Here, in contrast, the trial court gave two additional reasons for denying petitioner's motion to proceed *pro se*. Petitioner has failed to demonstrate that the trial court's reliance on those factors (untimeliness and intent to cause delay) was unreasonable in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

With respect to timeliness, the Supreme Court held in *Faretta* that a request for self-representation made "weeks before trial" is timely. *Faretta,* 422 U.S. at 835. Here in contrast, petitioner made his request the morning of trial. The trial court noted that it was an untimely request given that they had a jury impaneled and waiting. *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005)(petitioner's request was untimely where he "made his request to represent himself on the day his trial was to commence and after several continuances").

Moreover, the trial court concluded that petitioner's motion was an attempt to manipulate the system to further delay his case. The trial court noted that petitioner's case was initially scheduled for trial on March 15th, 2005. On March 7th, his attorneys withdrew due to petitioner's bar complaint, requiring a

19 - OPINION AND ORDER

continuance.  Tr., p. 329; Resp. Ex. 129.  In fact, petitioner again filed a bar complaint, this time against his current counsel on the eve of trial.  Tr., p. 343.

In sum, the trial court's denial of petitioner's motion on the grounds that it was untimely and made for purposes of delay is consistent with *Faretta*.  *See McCormick*, 621 F.3d at 976; *Howze v. Roe*, 92 Fed. Appx. 515 (9th Cir. 2004).  The trial court's *additional* reference to petitioner's lack of legal expertise does not violate the Sixth Amendment.  Accordingly, the PCR court's rejection of ground one is neither contrary to, nor an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).

### B.  Ground Two: Ineffective Assistance of Counsel

Petitioner argues in his brief that trial counsel was deficient because he failed to provide petitioner adequate information and assistance on his case, resulting in petitioner's entry of an involuntary guilty plea.  Respondent moves the court to deny habeas relief on the basis that the PCR court's rejection of petitioner's claim is neither contrary to, nor an unreasonable application of *Strickland*.  I agree.

#### 1. Standards

A claim of ineffective assistance of counsel requires the petitioner to prove that counsel's performance was deficient, and

20 - OPINION AND ORDER

that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland*, 466 U.S. at 687-88 (1987). If there is a failure of proof on either prong, habeas relief is not warranted. *Murray v. Schriro*, 746 F.3d 418, 457 (9th Cir. 2014).

*Strickland* applies to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). To show deficient counsel, a defendant must establish that his counsel's representation was outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 690. In order to establish prejudice in the guilty plea context, petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hibbler v. Benedetti*, 693 F.3d 1140, 1150 (9th Cir. 2012); *Doe v. Woodford*, 508 F.3d 563, 568 (9th Cir. 2007); *Hill*, 474 U.S. at 59.

Because "plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks," strict adherence to the deferential *Strickland* standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore,* 562 U.S. 115, 124 (2011). The

issue is not whether this court believes the state court's determination under *Strickland* was incorrect, but whether that determination was unreasonable, a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123-24 (2009); *Hibbler*, 693 F.3d at 1146.

### 2. Analysis

Petitioner pled guilty pursuant to a plea petition which provided that he (1) understood he was pleading to five counts of attempted aggravated murder; (2) understood the minimum and maximum sentences for the crime; and (3) offered his guilty plea "FREELY, VOLUNTARILY AND BY MY OWN CHOICE. I PLEAD GUILTY WITH A FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE CHARGING INSTRUMENT AND IN THIS PLEA PETITION." Resp. Ex. 103 (emphasis in original).

At the plea hearing, the trial court engaged in a colloquy with petitioner to ensure he understood the terms of the plea:

THE COURT:    First of all, as to the plea petition, the three-page document and the indication is that you have, in fact, signed that today. Is that correct, sir?

PETITIONER:    Yes, Your Honor.

THE COURT:    And do you swear that all the information in that plea petition is true, sir?

PETITIONER:    Yes, Your Honor.

\* \* \* \* \*

22 - OPINION AND ORDER

THE COURT:        And   the   last   paragraph   says: "I
                  understand  that  my  agreement  to  these
                  facts is part of a plea bargain, that I
                  am agreeing to these facts. I am stating
                  that they are voluntary, accurate and not
                  a   product   of   duress,   coercion   or
                  otherwise undue influence."

                  And do you agree that that's true, sir?

PETITIONER:       Yes, Your Honor.

Tr., pp. 371, 372, 375.

At the PCR proceeding, however, petitioner declared that
counsel was deficient for failing to maintain contact with him and
because he appeared unprepared for trial.

> 4.   Between the time of Mr. Coran's appointment and
>      August 30, 2005, I had virtually no substantive
>      contact with him. It was apparent to me that Mr.
>      Coran was not properly preparing my case for trial.
>      As a result, I sent a series of letters to Mr.
>      Coran and the court complaining about his conduct.

> 5.   I felt that I had no alternative but to resolve my
>      case pursuant to a plea agreement because I was
>      convinced that I could not receive a fair trial. I
>      was convinced that Mr. Coran had no intention of
>      zealously advocating on my behalf.

Resp. Ex. 122, p. 2 at ¶¶ 4 & 5.

Petitioner's trial counsel provided an entirely different view
of his representation. Counsel stated that prior to the day of
trial, he and petitioner were "working together and talking and
everything was moving along fine." Tr., p. 349. Counsel further
declared that he and petitioner "had no problems at all." Tr., p.
349.

23 - OPINION AND ORDER

The PCR trial court rejected petitioner's claim, finding trial counsel credible and concluded that petitioner knowingly and voluntarily entered his guilty plea:

> 8.  Trial counsel was prepared for trial. *He argued to suppress damaging evidence for nine hours the day before trial* was set to begin. When the court denied the motions to suppress, which trial counsel had anticipated because the law favored allowing the evidence, trial counsel worked out a very good plea deal the night before trial.
>
> 9.  Trial counsel kept petitioner appropriately informed and increased contact with trial counsel would not have improved petitioner's case. The trial court remarked that, in its observation of the previous day's lengthy motion hearing, petitioner and trial counsel had a good working relationship. Petitioner complained to the court that trial counsel had ignored his requests for copies of evidence in the past month. The court pointed out then that there had not been much new evidence or case development since the case was continued and trial counsel substituted for petitioner's previous counsel. The court also described the approximately three-inch stack of papers that petitioner had in front of him, which included police reports that he had claimed he did not have.
>
> * * * * *
>
> 12. Petitioner has not shown any resulting prejudice even if trial counsel did not maintain adequate contact . . . Two of the witnesses that petitioner told counsel to investigate turned out to be lying, at petitioner's request, in their affidavits. As the court noted, trial counsel did the best he could under the circumstances. The prosecution had overwhelming evidence of petitioner's guilt and petitioner's only witnesses on his behalf turned out to be lying. Petitioner was lucky that trial counsel was able to secure a plea at the last minute.

24 - OPINION AND ORDER

13. Trial counsel followed appropriate investigatory
    avenues . . . Trial counsel did everything he could
    to try to find exculpatory information from
    Hasselblad and, when that failed, to minimize the
    damage caused by his testimony.

14. The record shows that trial counsel did, in fact,
    contact and interview witnesses Hasselblad, Pushor,
    and Nebergall. These men were inmates with
    petitioner. Petitioner drafted false affidavits for
    the inmates to sign, in order to improve his case .
    . . Petitioner has offered no credible evidence
    that further investigation would have yielded to
    anything of consequence.

Resp. Ex. 134, pp. 6-8 at ¶¶ 8, 9, 12-14 (emphasis added).

Petitioner has failed to demonstrate that the PCR court's
findings that trial counsel kept petitioner informed and was
adequately prepared for trial, is unreasonable in light of the
evidence presented. 28 U.S.C. § 2254(d)(2). As noted by the PCR
court, trial counsel: (1) interviewed critical defense witnesses
with exculpatory evidence; (2) kept petitioner appropriately
informed of his case; and (3) argued to suppress damaging evidence
for nine hours the day before trial was set to begin.

Accordingly, petitioner has failed to demonstrate that
counsel's occasional communication was not within the range of
competence demanded of attorneys in criminal cases. With respect
to providing assistance, the PCR court found that trial counsel
adequately interviewed witnesses and investigated petitioner's
case. Given the fact that petitioner lost his motion to suppress
tape recordings of him soliciting a man to murder petitioner's

wife, the PCR court's finding that counsel's advice to enter into a guilty plea was not deficient under *Strickland* is reasonable. 28 U.S.C. § 2254(d)(1).

Moreover, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's conduct, he would not have pled guilty and would have insisted on going to trial on five counts of attempted aggravated murder. The evidence against petitioner was overwhelming. The state had recordings of petitioner soliciting Castro to murder his wife, and testimony from Curtis Reeves that petitioner previously solicited him to kill his wife and paid him a down payment of $1,000. Resp. Ex. 134, p. 4 at ¶ 4. Petitioner also provided Hasselblad written notes detailing physical descriptions, locations and other information for facilitating his wife's murder. Resp. Ex. 134, p. 4 at ¶ 4. Petitioner fabricated exculpatory evidence in the case by tampering with three trial witnesses and attempted to provide false statements to the court. Resp. Ex. 134, p. 4 at ¶ 4; *see Miller v. Champion*, 262 F.3d 1066, 1068 & 1074-75 (10th Cir. 2001)(strength of prosecutor's case is often best evidence of whether petitioner would have insisted on going to trial); *Brown v. Hill*, No. 05-CV-1393-HU, 2007 WL 464712 *5 (D. Or., Feb. 7, 2007), *aff'd* 267 Fed Appx. 630 (9th Cir. 2008).

To the extent that petitioner argues that counsel's alleged

deficient representation forced him to plead guilty, petitioner's argument fails. The trial record reflects that petitioner participated in a thorough plea colloquy, during which he represented that he understood the plea petition, had not been coerced, and had a clear understanding of what he was doing. Tr., pp. 364-376. Petitioner's signed plea agreement stated that he entered his guilty plea "freely, voluntarily and by [his] own choice." Resp. Ex. 103. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977)(representations made by a defendant during a plea hearing "carry a strong presumption of verity"). Thus, the PCR court's finding that petitioner entered a guilty plea knowingly and voluntarily is not unreasonable, and the PCR court's conclusion that trial counsel was not constitutionally ineffective is neither contrary to, nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

### III. **Unargued Claims**

In Ground One, petitioner alleges that the trial court erred in denying his motion to substitute counsel, in denying his motion to proceed *pro se*, and in denying his motion to withdraw his guilty plea. In his supporting brief, however, plaintiff addressed only the denial of his motion to substitute counsel and motion to proceed *pro se*. Similarly, in Ground Two, petitioner asserts five discrete claims of ineffective assistance of trial counsel. In his

brief, however, petitioner limits his ineffective assistance of counsel claim to the issue of trial counsel's failure to provide information and maintain contact.

In an application for habeas relief, petitioner carries the burden of proof. *Cullen*, 131 S.Ct. at 1398. Because petitioner fails to address any of the unargued subparts of grounds one and two in his brief, he has failed to sustain his burden of proving habeas relief is warranted. *Lambert v. Blodgett*, 393 F.3d 943, 970 n. 16 (9th Cir. 2004)(petitioner bears burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Nevertheless, the court has reviewed his unargued claims and is satisfied that petitioner is not entitled to relief on the remaining ineffective assistance of counsel claims, as well as the claim alleging denial of motion to withdraw his guilty plea. Accordingly, habeas relief is denied.

## **CONCLUSION**

Based on the foregoing, petitioner's Petition For Writ of Habeas Corpus is DENIED, and this proceeding is DISMISSED, with prejudice. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).    IT IS SO ORDERED.

DATED this __3__ day of August, 2015.

Owen M. Panner
United States District Judge